UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


JAMES O. RAY AND M. LOUISE RAY                                        PLAINTIFFS

V.                                                    CIVIL ACTION NO. 1:06cv516-LTS-RHW

RIMKUS CONSULTING GROUP, INC.,                                         DEFENDANTS
THOMAS E. HEIFNER, P.E., INDIVIDUALLY,
PAUL D. COLEMAN, INDIVIDUALLY,
GARY L. BELL, INDIVIDUALLY,
CLARENDON NATIONAL INSURANCE COMPANY AND
CGI GROUP, INC.


MEMORANDUM OPINION

Multiple defendants have been sued arising from Hurricane Katrina's destruction of Plaintiffs' residence in Long Beach, Mississippi, on August 29, 2005. Clarendon National Insurance Company (Clarendon) is the Plaintiffs' insurer. Plaintiffs allege that Clarendon assigned the adjustment of the loss to CGI Group, Inc. (CGI), which subsequently utilized Rimkus Consulting Group, Inc. (Rimkus) for an engineering assessment of the cause of the damage. Defendants Thomas E. Heifner (Heifner) and Gary L. Bell (Bell) are associated with Rimkus.

The Complaint for Fraud, Breach of Contract, and Bad Faith was filed originally in the Circuit Court of Harrison County, First Judicial District. A Notice of Removal [1] was filed by Rimkus and two served individuals. Clarendon and CGI concurred in this action by separate document [2]. At the time of removal, Heifner had not been served, and the Mississippi residency of Paul Colman (also associated with Rimkus and whose name was misspelled as "Coleman" in the original pleadings) would have defeated complete diversity of citizenship. However, Heifner has since answered and Colman has been voluntarily dismissed pursuant to Fed. R. Civ. P. 41.

Rimkus and Bell have filed a motion [5] to dismiss for failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)); Bell and Heifner have filed motions, [4] and [24], to dismiss for lack of personal jurisdiction (Fed. R. Civ. P. 12(b)(2)); and Heifner separately requests [25] Rule 12(b)(6) dismissal. These three defendants recently submitted amended answers, also. [46], [47], and [48].

The Rule 12(b)(6) Motions

In considering a motion under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the

well-pleaded facts set out in the complaint, and the Court must allow all inferences favorable to the Plaintiffs. *Lowery v. Texas A & M University System*, 117 F.3d 242 (5th Cir. 1997). Dismissal is proper only if it appears that the Plaintiffs can prove no set of facts in support of their allegations that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41 (1957).

The first count in the Complaint is for fraud against CGI, Clarendon, Rimkus, Heifner, the now-dismissed Colman, and Bell. Since Colman has been dismissed voluntarily, presumably because of his affidavit denying any involvement or contribution in any manner with the investigation or preparation of any reports involving damage to the Plaintiffs' residence, references to him in the pleadings will be deleted.

The underlying bases of Plaintiffs' claims are found in paragraphs 20 and 21:

Plaintiffs allege that Clarendon National's contract engineer, Ken Overstreet, completed an engineering report dated December 20, 2005, that was favorable to their claim. A signed copy of his report is attached here to as Exhibit "F." This report was emailed to Rimkus' Jackson, Mississippi office by Overstreet. Plaintiffs allege that Rimkus, acting by and through its agents and employees, particularly . . . Bell and Heifner, altered Overstreet's original report, and this alteration deleted any reference to wind as a cause of the destruction and damage to the structure of the Rays' home located at 470 West Beach Blvd., Long Beach, Mississippi, and inserted an altered conclusion that the entire structural damage to the Rays' home was caused by storm surge, as well as deleted numerous pictures of twisted and snapped trees and deleted eye witness statements and affidavits that supported serious wind damage to nearby structures, well before the storm surge appeared at the Ray home. Plaintiffs allege that Rimkus, acting by and through its agents and employees, altered Overstreet's favorable report dated December 20, 2005, and then forged Overstreet's name to the altered report without Overstreet's consent, approval or knowledge. The altered report dated February 3, 2006, which contains Overstreet's forged signature, is attached hereto as Exhibit "G."

Plaintiffs allege that Rimkus, . . . Bell and Heifner then forwarded the unfavorable, altered report to CGI and Clarendon National, and further allege that Rimkus disposed of the original report (favorable to the Rays) authored by Overstreet on December 20, 2005, including the photographs and eyewitness statements gathered by Overstreet to support his findings. Upon request, a copy of the altered report (favorable to Clarendon) was forwarded to Plaintiff, James O. "Bud" Ray, by CGI on February 6, 2006.

The particular averments of fraud and related damages related to the movants are found in paragraphs 27 through 32:

Plaintiffs allege that Rimkus, Bell . . . and Heifner intentionally and maliciously altered Overstreet's December 20, 2005, engineering report to falsely indicate storm surge was the cause of loss, when in fact Overstreet found and opined that wind was at least 50% of the cause of loss and structural damage to your Plaintiffs' home. Plaintiffs further

allege that either CGI and Clarendon National knew of and condoned Bell's, . . . Heifner's and Rimkus' fraudulent conduct for the reason that CGI and Clarendon hired Rimkus (and . . . Bell and Heifner), who was an outcome oriented vendor, to perform critical engineering reviews of its Hurricane Katrina losses, which were never intended to be fair or objective or truthful.

Plaintiffs allege that as a result of the Defendants' joint fraudulent conduct, they have been damaged in that Clarendon National and CGI have refused to pay and indemnify them completely for their extensive and serious casualty wind losses as required under policy number AHO1279867.

Further, Plaintiffs allege they have been denied full and complete additional living expenses due under policy number AHO1279867 as a direct consequence of the Defendants' fraudulent conduct and false reports.

Plaintiffs allege they have expended approximately $15,000.00 out of their personal savings for expert witnesses to prove up their wind coverage.

Plaintiffs allege that Defendants CGI, Clarendon National, Rimkus, Bell, . . . and Heifner acted with malice, or otherwise intentionally acted to defraud them of insurance benefits due, necessitating an award of compensatory damages for all policy benefits due and owing under policy number AHO1279867, attorney's fees, costs and expenses, and punitive damages to the fullest extent allowed by Miss. Code Ann. § 11-1-65.

Plaintiffs further allege that they have suffered emotional stress and mental anguish as a direct and proximate result of the Defendants' fraudulent conduct, and demand that CGI, Clarendon National, Rimkus, Bell, . . . and Heifner should fully and fairly compensate them for these items of damage.

There is also a count of breach of contract lodged against Clarendon, and a count of bad faith against Clarendon and CGI. For factual purposes only, it appears that the total coverage for dwelling, other structures, personal property, and loss of use is $708,300.00. By letter dated March 27, 2006, CGI, as claims administrator for Clarendon, acknowledged $500,000.00 in payments, and offered to pay another $100,000.00 for a policyholders release. It is obvious that Plaintiffs believe they are entitled to full policy benefits as well as extra-contractual damages.

Bell is identified as "the individual in charge and control of the Mississippi district for Rimkus and has a paramount authority to approve any and all corporate decisions for the Rimkus Mississippi district . . . ." It is further alleged that Bell "individually conspired with Heifner . . . and other Rimkus employees to commit the wrongful, improper and fraudulent acts complained of . . . ." Heifner is a professional engineer whose signature appears on the February 3, 2006, report . It has already been mentioned that Overstreet's name is on that document as well.

Aside from the standard applicable to a Rule 12(b)(6) motion, certain portions of the complaint have been quoted in full because there is an explicit assertion in the amended answers

and in Heifner's 12(b)(6) motion (and implicit in Rimkus's and Bell's similar motion) that Plaintiffs' allegations of fraud, which Rimkus, Bell, and Heifner deny occurred, do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b).  The usual remedy in the face of a valid Rule 9 claim is not outright dismissal, but allowance of an amendment under Fed. R. Civ. P. 15. However, if the original complaint suffered such shortcomings as being contrary to Rule 9, they certainly did not prevent Rimkus, Bell, or Heifner from filing answers or framing responses to the fraud claims.  It also appears that Plaintiffs have set forth the minimum required particularities, usually framed in terms of the who, what, when, where, and how of the alleged fraud.  *See, e.g., United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450 (5th Cir. 2005).  Of course, any defendant may resort to Fed. R. Civ. P. 12(e)'s provision for a more definite statement.

As to movants' substantive claims, the Mississippi Supreme Court, reasoning that "[j]urisprudence should not be in the position of approving a deliberate wrong," *Bass v. California Life Insurance Co.*, 581 So. 2d 1087, 1090 (Miss. 1991), has held:

> An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim . . . . However, an adjuster is not liable for simple negligence in adjusting a claim . . . . *He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.*

*Id.*  (quoting *Dunn v. State Farm Fire & Casualty Co.*, 711 F. Supp. 1359, 1361 (N.D. Miss. 1987); citations omitted) (emphasis added).

The Plaintiffs' cause of action is not based merely on breach of contract.  There is no question that they have alleged that movants committed, approved, or otherwise participated in a deliberate wrong related to the circumstances surrounding the preparation of, issuance of, and reliance on the report dated February 3, 2006.  It is Plaintiffs' position that James K. Overstreet, whose name appears on that document as one of its authors, did not give his consent, permission, or authorization for any one to sign his name to it.  In comparing his signature on the first report (which movants call a "draft") with the one on the second (which is initialed by someone else), it is readily apparent that the same person did not write both.

Heifner's carefully worded affidavit in support of his 12(b)(2) motion is more telling of his independent role giving rise to potential liability in adjusting the claim.  He describes himself as "self-employed," an "outside engineering consultant."  He is the "engineer of record for the Rimkus investigation into the damage at the Ray residence," although he conducted no on-site investigation nor spoke with them in any manner.  He did not communicate with Bell "until after the report had been sent to CGI Insurance Company [sic]."

Bell has not submitted an affidavit.  He goes no farther than denying involvement in investigating or generating any reports regarding the Plaintiffs' residence, and also denies that he had any relationship, contractual or otherwise, with Plaintiffs.

Under the complaint, the movants stand accused of corporate or personal misconduct associated with the adjustment of the Plaintiffs' claim that is cognizable under Mississippi law. It is not the purpose of a motion to dismiss to substitute for or bypass the development of relevant evidence, and it is also not the point for weighing credibility.  This Court is not in a position to declare, allowing all inferences favorable to the Plaintiffs, that there are no set of facts that would entitle them to relief.  Accordingly, Rimkus's, Bell's, and Heifner's motions to dismiss grounded on Fed. R. Civ. P. 12(b)(6) will be denied.

### The Rule 12(b)(2) Motions

In *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983), the court of appeals summarized well settled law:

> In a diversity action a federal court enjoys jurisdiction over a nonresident defendant to the extent permitted by the long-arm statute of the forum state . . . . Two tests must be met before a state statute can confer jurisdiction over a nonresident defendant.  First, the defendant must be amenable to service under the statute, a requirement that is controlled by the law of the forum state. Second, assertion of jurisdiction over the defendant must be consistent with the due process clause of the fourteenth amendment, a requirement that is controlled by federal law.  Due process requires that a nonresident defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" or that he perform some act "by which (he) purposefully avails (him)self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," before the forum may extend its long-arm to embrace him.
>
> . . . .
>
> The party invoking the jurisdiction of a federal court bears the burden of establishing the court's jurisdiction over a nonresident defendant . . . . On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except as controverted by the defendants' affidavits, must be taken as true.
>
> . . . .
>
> An alleged tortfeasor need not have been present in the state.  If, as is alleged in this case, he causes injury in Mississippi, he is covered by the statute.
>
> . . . .

> The number of contacts with the forum state is not, by itself, determinative . . . . What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state . . . . "When a defendant purposefully avails himself of the benefits and protection of the forum's law--by engaging in activity . . . outside the state that bears reasonably foreseeable consequences in the state --maintenance of the law suit does not offend traditional notions of fair play and substantial justice."

*Id.* at 331-33 (footnotes and citations omitted).

The court recognized two other relevant factors in analyzing the due process prong: "the interest of the state in providing a forum for the suit," and the "relative conveniences and inconveniences to the parties." *Id.* at 333 (citations omitted). In *Brown*, personal jurisdiction was found where a single defamatory phone call by a nonresident about a Mississippi resident was made from outside the state to a person in Mississippi.

Another Fifth Circuit opinion, *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985), contains an excellent discussion of Mississippi's long-arm statute (Miss. Code Ann. § 13-3-57). *Thompson* also draws more clearly the distinction between the exercise of specific and general jurisdiction:

> The former occurs "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." . . . "General jurisdiction" is exercised when a state asserts personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. . . . When the issue is one of general jurisdiction the defendant's contacts with the forum are examined to determine whether they are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction . . . . When the issue is one of specific jurisdiction, a court must examine the relationship among the defendant, the forum, and the litigation.

755 F.2d at 1170 (citations omitted).

Mississippi's long-arm statute, cited *supra*, covers *inter alia* any nonresident person who commits a tort in whole or in part against a resident of this state. Bell and Heifner attempt to point to distinctions between the injury aspect of a tort (injury being the invasion of any legally protected interest of another ) which confers jurisdiction, and the occurrence of some consequential damages in the state which does not. This Court agrees that "it is clear that the Fifth Circuit never intended a state to sacrifice the sovereign power of their courts by rightfully delineating a difference between far flung economic effects of torts and the far more common scenario where the injury and damages occur together in place and time." *Tellus Operating Group v. R & D Pipe Company*, 377 F. Supp. 2d 604, 608 (S.D. Miss. 2005). *Cf. First Trust National Association v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre*, 996 F. Supp. 585 (S.D. Miss. 1998) (no jurisdiction in Mississippi federal court where a Minnesota financial institution sued a New Orleans based law firm for an opinion issued by the law firm on a ship mortgage prepared by Texas attorneys to a New York investment banking house and delivered to

counsel for the banking house in Dallas; only Mississippi connection was the location of the property on which the opinion was issued).

As mentioned above, Heifner, a resident of Panama City Beach, Florida, at relevant times working out of Rimkus's Pensacola office, has submitted an affidavit. It reveals that he was assigned Hurricane Katrina files and was "involved in the investigation of the Ray home as a result of the extraordinarily high amount of investigations requested by insurance companies following Hurricane Katrina." Rimkus, which received hundreds of requests to investigate casualty losses along the Gulf Coast, asked Heifner and several other engineers "throughout the United States to assist in the generation of the reports prepared in these investigations."

Although Heifner's affidavit is in terms of not being given Mississippi assignments on a continuous and systematic basis, it is specific jurisdiction which is applicable here. Bell, an adult resident citizen of New Orleans, Louisiana, and who purportedly works in Rimkus's office there, has not submitted an affidavit; nevertheless, his identified role as the individual in charge and control of the Mississippi office with paramount authority to approve any and all corporate decisions for the Rimkus Mississippi district is part of the same insurance claim process.

The source and connection of this cause of action is an insurance policy issued to Mississippi residents for losses sustained to their Mississippi home by Hurricane Katrina, along with intentional torts alleged to be associated with the adjustment of their claim. In the realm of the insurance world, the connection between this contract, this loss and claim for benefits, the company's investigation, the submission of a report as part of the investigation, and the ultimate decision made by the company utilizing that report bring reasonably foreseeable consequences in this state, not of the far flung economic nature but of injury and damage associated with insurance policies and independent torts (or even gross negligence, malice, or reckless disregard) which may arise from them. Those performing work for Rimkus knew or should have known this resulting impact was likely. Whether Plaintiffs are able to prevail ultimately or these Defendants can mount a successful defense is left for another day, but Plaintiffs have met their burden that this state has an interest in providing a forum for them to pursue their cause of action, and Panama City Beach resident Heifner and New Orleans resident Bell remaining in this suit is not comparatively inconvenient.

It is my opinion that subjecting Heifner and Bell to appear in this forum neither violates Mississippi's long-arm statute nor offends traditional notions of fair play and substantial justice. Their motions to dismiss under Fed. R. Civ. P. 12(b)(2) will be denied.

A separate order shall issue. Decided this the 11th day of September, 2006.

s/ L. T. Senter, Jr.
L. T. Senter
Senior Judge